UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Manpreet Singh,<br><br>    Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.;<br>Trans Union, LLC; and Discover Bank,<br><br>    Defendants. | No. 0:25-cv-00378 (KMM/DJF)<br><br>ORDER ON PLAINTIFF'S<br>MOTION FOR ATTORNEYS'<br>FEES AND COSTS |

This matter is before the Court on Plaintiff Manpreet Singh's Motion for Attorneys' Fees and Costs. [Dkt. 58.] For the reasons discussed below, the Motion is granted in part.

## BACKGROUND

In January 2025, Plaintiff filed this lawsuit alleging that Defendant Midland Credit Management, Inc. ("Midland") and other consumer reporting agencies and financial institutions[1] (collectively "Defendants") violated the Fair Credit Reporting Act ("FCRA") by including, disseminating, and failing to investigate erroneous information on Plaintiff's credit report. [Dkt. 1 ¶¶ 1–2.] Plaintiff, who moved to the United States in 2023, asserts that Defendants incorrectly attributed contact information and debts that predated his arrival in the country to a Social Security number he received in 2024. [*Id.* ¶¶ 15–21.]

---

[1] Plaintiff initially brought this lawsuit against Midland, Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and Discover Bank. [Dkt. 1.] Plaintiff has since settled his claims against Equifax, which has been dismissed from this case. [Dkt. 48.] In August, following Plaintiff's acceptance of a Rule 68 offer of judgment, judgment was entered in favor of Plaintiff against Midland, and Midland is no longer a party to the ongoing suit. [Dkt. 56.]

1

Midland eventually served an offer of judgment on Plaintiff pursuant to Federal Rule of Civil Procedure 68, offering to pay Plaintiff $7,500 and "reasonable attorneys' fees and costs" to resolve all claims against Midland. [*See* Dkt. 60-1 ¶¶ 1–2.[2]] Those fees and costs were to be those made "in connection with Plaintiff's claims against Midland only in the [present] suit" and in an amount "agreed to between the parties." [*Id.* ¶ 2.] However, if the parties were unable to come to an agreement, the amount would be "determined by the Court upon motion and any responses thereto[.]" [*Id.*] Plaintiff accepted the offer of judgment. [Dkt. 60-2; *see* Dkt. 65-1 at 19–20.]

Over the month and a half that followed, Plaintiff's attorney, Yitzchak Zelman, and Midland's attorney attempted to negotiate fees and costs. Shortly after Plaintiff accepted the offer of judgment, Midland's attorney requested that Mr. Zelman provide his "fee and cost demand, as well [his] firm['s] time records supporting it[.]" [Dkt. 65-1 at 18–19.] Mr. Zelman offered to settle for "an absolute bottom line of $22,500," which included the $7,500 payment. [*Id.* at 18.]

A series of emails between counsel ensued, in which Midland's attorney insisted that Mr. Zelman provide his billing records. [Dkt. 65-1 at 8–17.] Mr. Zelman "agree[d] to share [his] billing records with [Midland's attorney], on the condition that [Midland's attorney] do the same." [*Id.* at 15.] Midland's attorney disputed the relevance of his own

---

[2] Identical copies of the offer of judgment and notice of acceptance were filed with Midland's original notice of acceptance [Dkt. 55 at 1–4] and as an addendum to Mr. Zelman's declaration in connection to the instant motion [Dkts. 60-1, 60-2]. For simplicity, the Court provides citations only to Mr. Zelman's declaration.

2

billing records. [*Id.* at 12–14.] After some back-and-forth, Mr. Zelman reiterated his $22,500 offer. [*Id.* at 9–10.] Midland did not respond until almost a month later, when its attorney rejected that offer and informed Mr. Zelman that Midland would file the notice of acceptance of the offer of judgment with the Court that day. [*Id.* at 8–9; *see* Dkt. 55.] That same day, Mr. Zelman sent his billing records to Midland's attorney. [Dkt. 65-1 at 7–8.] Midland did not respond.

On August 26, 2025, Mr. Zelman emailed Midland's attorney indicating that the deadline to file a fee petition regarding the offer of judgment was August 28 and asking if Midland would attempt to resolve the fee issue before then. [*Id.* at 6.] Midland's attorney did not reply until August 28, disputing Mr. Zelman's requested hourly rate, the number of hours worked, and the costs requested. Midland counteroffered $10,256.25 in fees and costs, which Mr. Zelman declined. [*Id.* at 2–3.]

Later that day, Plaintiff filed his motion for attorneys' fees and costs [Dkt. 58], which is now before the Court. In addition to a memorandum in support of the motion, Plaintiff filed a declaration from Mr. Zelman, that included billing records of his requested fees and costs, and a declaration from Ryan Peterson, a Twin Cities consumer law attorney. [Dkts. 60, 61.] Midland filed its memorandum in opposition and a declaration of its attorney, Mr. Newman, on September 11, 2025.[3] [Dkts. 64, 65.] Plaintiff subsequently

---

[3] On September 4, 2025, the parties filed a stipulation to extend Midland's time to respond from September 8, 2025 until September 11, 2025 pursuant to Local Rule 7.1(b)(2). [Dkt. 62.] The Court did not respond to the stipulation in a timely manner and Midland filed their responsive brief and declaration on September 11, 2025 as requested. [Dkts. 64, 65.] To the extent necessary, the Court accepts the parties' stipulation and finds Midland's filing to be timely.

3

sought and was granted leave to file a reply [Dkts. 66, 67], which was filed on September 24, 2025 [Dkt. 68]. The motion is now ripe for decision.

## DISCUSSION

Plaintiff seeks a total award of $28,712.50, comprised of $20,622.50 in attorneys' fees and $590 in costs in addition to the $7,500 provided in the offer of judgment. [Dkt. 59 at 14.] Midland argues that these amounts are unreasonable because (1) Mr. Zelman's requested hourly rate is unreasonably high; (2) Mr. Zelman billed an excessive number of hours; and (3) Plaintiff unfairly seeks fees and costs related to work performed as to all Defendants rather than solely to Midland. [Dkt. 64 at 7–16.] Midland also argues that Mr. Zelman's "unreasonable" approach to negotiating the award warrants a further fee reduction. [*Id.* at 17–24.] The Court concludes that an award of $20,175 in attorneys' fees and $211.25 in costs is reasonable and, including the $7,500 offer of judgment payment, awards Plaintiff a total of $27,886.25.

### A. Legal Standard

District courts have "broad discretion" to award attorneys' fees. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). Courts typically begin their evaluation of a reasonable fee award with the "lodestar" method, by which the number of hours reasonably spent is multiplied by a reasonable hourly rate. *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). There is a "strong

presumption" that the lodestar figure is a "reasonable" fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

"A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). "Key factors" in assessing the reasonableness of an hourly rate include "the skill, experience, and reputation of counsel." *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988). In determining a reasonable rate, district courts are given "great latitude to determine a reasonable hourly rate because [they are] 'intimately familiar' with [their] local bar," *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017) (cleaned up), and "may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825.

The party seeking fees has the burden to produce "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking fees also has the burden of "documenting the appropriate hours expended[.]" *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). In addition to assessing the reasonableness of the requested hourly rate, courts must also "determine whether the hours claimed were reasonably expended." *Harter*, 894 F.3d at 889 (quotations omitted). That determination is "less than an exact science," *Minneapolis Star & Tribune Co. v. United States*, 713 F. Supp. 1308, 1312 (D. Minn. 1989), and courts may rely on their own

"knowledge, experience, and expertise of the time required to complete similar activities." *Harter*, 894 F.3d at 889.

In general, "the determination of fees should not result in a second major litigation," and district courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When awarding fees, a court should aim to "do rough justice, not to achieve auditing perfection," and "may use estimates in calculating and allocating an attorney's time." *Id.*

B. Analysis

*Reasonable Hourly Rate*

First, the parties disagree about the reasonableness of Mr. Zelman's requested hourly rate of $425.[4] In support of this rate, Plaintiff submits a declaration attesting to Mr. Zelman's training and experience as a consumer law attorney. [Dkt. 60 ¶¶ 4–8.] Using the United States Consumer Law Attorney Fee Survey Report, as other courts have, *see, e.g.*, *Kuntz v. Messerli & Kramer P.A.*, No. 16-cv-2676 (JNE/BRT), 2017 WL 3332222, at *3 (D. Minn. Aug. 4, 2017), and adjusting for inflation using the Bureau of Labor Statistics's CPI Inflation Calculator, Plaintiff calculates that the average hourly rate for a consumer law attorney with his level of experience in the Twin Cities is $440.[5] [Dkt. 60 ¶¶ 14–16.]

---

[4] Midland does not challenge the $175 hourly rate requested for Plaintiff's paralegal's work, which is, in any event, reasonable. [Dkt. 64 at 9 n.4.] This $175 rate is used to calculate the portion of the final fee award attributable to Plaintiff's paralegal's time.

[5] Mr. Zelman's declaration states that the 2017–18 United States Consumer Law Attorney Fee Survey Report concluded that the median hourly rate for Twin Cities consumer law attorneys with 11–15 years of experience was $338—$12 per hour less than

Plaintiff also submits a declaration of a local practitioner stating that the requested rate is reasonable under the circumstances. [Dkt. 61 ¶¶ 13–14.] Seeking an hourly rate of $425, $15 per hour less than that calculated average, Plaintiff emphasizes that he "voluntarily reduced" his requested rate to "head off any challenges" from Midland. [Dkt. 59 at 11.]

The Court finds that Plaintiff's requested hourly rate of $425 is reasonable. Plaintiff offers satisfactory evidence that Mr. Zelman's requested rate is commensurate with prevailing rates in the Twin Cities for attorneys of similar experience performing similar work on similar cases. Importantly, Plaintiff grounds his requested rate in previous findings and methods employed by courts in this District. *See Kuntz*, 2017 WL 3332222, at *3 (relying on the United States Consumer Law Attorney Fee Survey Report to find that the median hourly rate for consumer law attorneys in Minnesota was $350 in 2015–16); *Berscheid v. Experian Info. Sols., Inc.*, No. 22-cv-086 (JRT/LIB), 2023 WL 3750182, at *4 n.4 (D. Minn. June 1, 2023) (applying the Bureau of Labor Statistics's CPI Inflation Calculator to determine how much buying power $350 in December 2016 would have when the relevant motion was filed). Plaintiff also submits a declaration of a local consumer law attorney, Ryan Peterson, to support this amount, as is common practice in this District. *See Wiley v. Portfolio Recovery Assocs., LLC*, 594 F. Supp. 3d 1127, 1147 (D. Minn. 2022) (relying on attorneys' declarations as "persuasive evidence" of reasonableness). Mr. Peterson, who attests to his knowledge of prevailing rates in the Twin

---

the median rate found in *Kuntz*. [Dkt. 60 ¶ 15.] Plaintiff applies the CPI Inflation Calculator to this lower median rate to determine the average hourly rate in 2025. [Dkt. 60 ¶ 16.]

Cities, confirms his familiarity with Mr. Zelman's skill, experience, and reputation, and ultimately concludes that a $425 per hour rate is reasonable. [Dkt. 61.]

Moreover, a court in this District recently found that a $425 hourly rate was reasonable in a Fair Debt Collection Practices Act ("FDCPA")[6] case involving an attorney with fourteen years' experience (commensurate to Mr. Zelman) who submitted declarations from local practitioners attesting to that rate's reasonableness. *See Keating v. Frederick Debt Mgmt., LLC*, No. 24-cv-3659 (ECT/EMB), 2025 WL 2506125, at *3 (D. Minn. Sept. 2, 2025). The Court finds that $425 hourly rate is a reasonable hourly rate.

Relying on this Court's decision in *Woodward v. Credit Service International Corporation*, Midland disputes this rate as unreasonably high and instead suggests that $325 is more appropriate because, according to Midland, this case was "simple and straightforward" and a "run-of-the-mill dispute." [Dkt. 64 at 9–15.] In *Woodward*, an FDCPA case, the Court rejected a $450 hourly rate and concluded that a $350 hourly rate was appropriate. No. 23-cv-632 (KMM/ECW), 2024 WL 228454 (D. Minn. Jan. 22, 2024), *aff'd*, 132 F.4th 1047 (8th Cir. 2025). But *Woodward* is distinguishable. The *Woodward* case involved two defendants, was "refreshingly simple," required "a bare minimum of litigation," and "resolved quickly." *Id.* at *5. This case involves a plaintiff with a unique set of facts, claims against five separate defendants, and included discovery. [*See, e.g.*,

---

[6] The FCRA, under which Plaintiff brough his claims in this case, and FDCPA are both part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq*. They share similar features, including their treatment of attorneys' fees. *Compare* 15 U.S.C. § 1692k(a), *with* 15 U.S.C. § 1681o(a) (both awarding, among other things, "reasonable" attorneys' fees "as determined by the court" to the prevailing party).

Dkts. 1, 42, 45.] Mr. Zelman also has almost twice as much experience practicing consumer protection law as the attorney in *Woodward*. 2024 WL 228454, at *3. And significantly, unlike the *Woodward* attorney who did not offer an opinion about the prevailing rate for comparable cases or provide any attestation from a local practitioner, *id.* at *4, Mr. Zelman provides support for the relevant prevailing rate through his declaration and Mr. Peterson's. [Dkt. 60 ¶¶ 14–16; Dkt. 61 ¶¶ 13–14.] The Court's decision in *Woodward* does not support a reduction of Mr. Zelman's requested $425 hourly rate.

### *Reasonableness of Hours Expended*

The parties also disagree about the reasonableness of the hours that Mr. Zelman claims. They total 47.4 hours by Mr. Zelman, including 39.3 hours on the case in chief and 8.4 hours spent preparing the fee petition, and 2 hours by a paralegal. [Dkt. 59 at 14.] These hours reflect that Mr. Zelman waived all fees for time expended by local counsel and further does not seek recovery for "work that was done towards the other defendants." [Dkt. 59 at 8–9.]

The Court first addresses the hours spent on the case in chief. As a topline, the Court believes the 39 hours of attorney work and 2 hours of paralegal work spent on this case are reasonable. Mr. Zelman's billing records contain 69 distinct entries over 11 months. Those entries include familiarizing himself with Plaintiff's case—which is atypical in key respects—and assessing the merits of his claims; drafting the complaint; preparing and submitting a Rule 26(f) report; engaging in discovery; and conducting relevant legal research. [Dkt. 60-3.] Spending roughly 40 hours on this amount of legal work is within reason. *See Cheesman v. Williams & Fudge, Inc.*, No. 24-cv-1264 (PJS/DTS), 2025 WL

9

1766115, at *4 (D. Minn. June 26, 2025) (awarding fees for 54.27 hours expended on a "run-of-the-mill" FDCPA case); *Beckler v. Rent Recovery Sols., LLC*, No. 21-cv-2680 (WMW/DTS), 2022 WL 17689842, at *4 (D. Minn. Dec. 15, 2022) (reducing the plaintiff's claimed hours by 50 percent and awarding fees for approximately 24.6 hours expended in a FDCPA case that "assert[ed] few facts and only one legal claim").

In response to this topline request, Midland identifies what it sees as four categories of "problematic billing" totaling an amount of time that is "excessive by at least 14 hours." [Dkt. 64 at 15.] The Court addresses each of these challenges in turn.

*Administrative Tasks*

First, Midland suggests that Plaintiff improperly seeks recovery for administrative work that should either be billed at a reduced rate or is wholly non-compensable. The Court agrees in part. Generally, "[p]laintiffs are not entitled to reimbursement for expenses that are part of normal office overhead[.]" *Emery*, 272 F.3d at 1048; *see Wiley*, 594 F. Supp. 3d at 1153 (noting that "tasks that are administrative or clerical in nature," including electronic filing, are non-compensable). But fee awards may be appropriate for tasks that are "seemingly" administrative and "described alongside a substantive task and in a way that suggests the administrative task was a minor event." *Kelly v. United Payment Ctr. Inc.*, No. 22-cv-1799 (ECT/DLM), 2023 WL 6285184, at *5 (D. Minn. Sept. 27, 2023).

Some of the 10 billing record entries that Midland challenges as administrative resemble those in *Kelly*. [*See* Dkt. 65-2 at 9, 10, 13.] The following are a few examples: "Reviewed new client intake and file for case viability. Opened case file."; "Reviewed local counsel's revisions to the Complaint, along with his comments for missing

10

documentation. Researched file and discussed with [law firm partner and paralegal] to see what other documents we have to provide." [Dkt. 65-2 at 2.] These kinds of entries note "substantive" work that happened to involve "minor" administrative tasks, *see Kelly*, 2023 WL 6285184, at *5, and do not require deduction.

However, some entries appear to be wholly administrative. [*See, e.g.*, Dkt. 65-2 at 3 ("Reviewed ECF Bounce confirming PHV was filed."; "Summons issued from court, sent them out for service on all 5 defendants."; "Call with [local counsel] to provide him with credit card information for filing fees.").] Courts in this District have "repeatedly indicated that routine clerical tasks cannot be accounted for at an attorney's, or even a paralegal's, billing rate." *Berscheid*, 2023 WL 3750182, at *7. The Court identifies seven entries that appear to be entirely administrative, totaling 0.5 hours at an attorney rate and 1.0 hours at a paralegal rate. Those amounts are deducted from the fee award.

*Unnecessary Work*

Next, Midland argues that Plaintiff claims fees for work that was "unnecessary to the case." [Dkt. 64 at 15.] First, Midland points to 0.2 hours (0.1 at an attorney rate and 0.1 at a paralegal rate) spent "fixing mistakes"—when Mr. Zelman noticed that Midland wasn't copied on an email and instructed his paralegal to recirculate it, and the paralegal did so. [Dkt. 64 at 15; Dkt. 65-2 at 11.] Seeking to recover fees from Midland for time spent correcting an oversight does not reflect the "billing judgment" required of parties seeking attorneys' fees. *Hensley*, 461 U.S. at 437 (1983); *see also id.* at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."). The Court deducts those hours from the fee award.

11

Second, Midland challenges 1.2 hours that Mr. Zelman spent corresponding with Midland's attorney about whether he was required to turn over his billing records prior to filing a fee petition. [Dkt. 64 at 15; Dkt. 65-2 at 14.] Although there is no clear answer on whether time spent negotiating the production of billing records in a fee dispute is recoverable, the Court finds *Berscheid*, another case against Midland, instructive. 2023 WL 3750182. There, Midland asked the plaintiff's counsel to produce its billing records in negotiations. *Id.* at *2. Instead of "respond[ing] meaningfully," Midland waited until after the fee petition was filed to seek a full reduction of the time the plaintiff's counsel billed challenging Midland's billing-records request. *Id.* at *2, 7. Finding that plaintiff's counsel had "expended reasonable hours negotiating and litigating the attorney's fee award," the court denied Midland's request for a reduction in attorneys' fees. *Id.* at *7 (stating that "[p]roduction of fee records is not a prerequisite for bringing a motion for attorney's fees" and declining to reduce fee award for time spent "resisting Midland's [production] request"). Because the circumstances here are similar, the Court finds the reasoning in *Berscheid* persuasive and declines Midland's request to deduct the entry.

*Other Co-Defendants*

Midland also argues that some of the hours for which Plaintiff seeks compensation reflect work that was done as to all four remaining Defendants, as opposed to work focused on Midland alone. But Midland fails to support this argument with specifics. Midland does not clearly identify which hours are subject to this challenge, nor explain how it knows that those hours are improperly included. And Mr. Zelman, an officer of the Court, attests that he has already excluded from his request any time for "work that was done towards the

other defendants." [Dkt. 59 at 8–9; *see also* Dkt. 60 ¶ 19 n.6 (noting that any time "solely attributable" to the non-Midland Defendants was removed from the billing records supplied).] Midland offers no evidence disproving his claim. In arguing that it owes only 25 percent of the total amount requested,[7] Midland simply points to the offer of judgment, which states that Midland would pay fees and costs "in connection with Plaintiff's claims against Midland <u>only</u> in the [present] suit." [Dkt. 60-1 ¶ 2.] But Midland does not explain how that language supports the bright-line deduction it requests. Without more, the Court cannot conclude that 75 percent of the challenged hours reflect work performed as to the other Defendants and denies Midland's requested reduction.

*Co-Counsel Communications*

Finally, Midland argues that time entries totaling 1.8 hours are non-compensable co-counsel communications that were not documented with the requisite specificity. The Court disagrees. Co-counsel communications can be compensable. *See Berscheid*, 2023 WL 3750182, at *5 (noting that "courts have required attorneys seeking reimbursement for internal meetings" to "identify explicitly the subject matter of their discussions" and awarding fees for sufficiently documented communication between attorneys). The 1.8 hours Midland challenges, averaged over the 11 months captured in Mr. Zelman's billing records, amount to about 0.16 hours, or less than ten minutes, per month. It was reasonable for Mr. Zelman to spend this small amount of time coordinating his efforts with others

---

[7] Midland notes that one of the original five co-defendants was terminated from the suit in June 2025, and it therefore "omits them in the 'count' of co-defendants[.]" [Dkt. 64 at 16 n.10.] In this way, Midland calculates its argued responsibility for just one fourth of the time and costs.

13

working on the case. The Court also finds that Mr. Zelman's billing records document the communications with enough specificity. [*See, e.g.*, Dkt. 60-3 at 5 ("[e]mail with local counsel about fee petition issues and caselaw," "[d]iscussed Midland's Offer of Judgment with [partner] to talk out if client should go for this or not").] Moreover, Plaintiff's local counsel is not seeking recovery for any time he expended on the matter, alleviating any concerns about "double billing." *Cheesman,* 2025 WL 1766115 at *4. The Court thus declines to reduce the fee award for this reason.

### *Hours Expended on Fee Petition*

In addition to the fees discussed above, Plaintiff seeks to recover fees for 8.4 hours spent preparing the fee petition and 7.9 hours spent preparing the Reply. [Dkt. 68 at 17.] Because the hours spent preparing the fee petition are not challenged and, in any event, are reasonable and compensable, the Court grants Plaintiff's request for the 8.4 hours his counsel spent doing so. *See Bell v. Am. Accts. & Advisers, Inc.*, No. 18-cv-2474 (MJD/ECW), 2018 WL 6718573, at *5 (D. Minn. Nov. 15, 2018) ("Compensation for reasonable fees incurred in preparing a fee petition is permissible.").

But the Court declines at this time to award fees for the 7.9 hours spent preparing the reply. "A claim for attorney's fees . . . must be made by [a] motion" that "state[s] the amount sought or provide[s] a fair estimate of it[.]" Fed. R. Civ. P. 54(d)(2)(A), (B)(iii). Parties may seek additional attorneys' fees by filing a supplemental motion for fees. *See Smith v. Gurstel Chargo, PA*, No. 8:14-cv-183, 2016 WL 1312527, at *1 (D. Neb. Apr. 4, 2016) (granting a supplemental motion for attorneys' fees). Here, Plaintiff did not file a supplemental motion for fees and instead raised this request for the first time in his Reply

14

brief. [Dkt. 68 at 17.] In part because the posture of this request does not provide Midland a chance to respond, the Court declines to consider it. *See* D. Minn. LR 7.1(c)(3)(B) ("A reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response."). However, Plaintiff is free to file a supplemental motion if he so wishes.

### *Further Reduction*

Midland asks the Court to further reduce Plaintiff's fee award for Mr. Zelman's "unreasonable" "positions and tactics." [Dkt. 64 at 17–24.] The Court declines to do so. Upon Plaintiff's acceptance of the offer of judgment, Mr. Zelman promptly made an offer to resolve this issue at a reduced rate, remained in communication (and on multiple occasions followed up) with Midland's attorney, and ultimately provided the billing records Midland requested. [Dkt. 65-1; Dkt. 68 at 10.] Mr. Zelman was entitled to negotiate in good faith for his fees and costs. The Court does not agree that Mr. Zelman engaged in the type of behavior that courts in this District have admonished with a fee reduction. *See, e.g.*, *Olson v. Messerli & Kramer, P.A.*, No. 07-cv-0439 (PJS/RLE), 2008 WL 1699605, at *3 (D. Minn. Apr. 9, 2008) (declining to award fees for time spent preparing a fee petition where the plaintiff's counsel refused to provide documentation and "grossly overreached" in seeking to recover for an "extraordinary" amount of time); *Ricketson v. Advantage Collection Pros.*, LLC, No. 21-cv-2541 (WMW/ECW), 2023 WL 2529211, at *4–5 (D. Minn. Mar. 15, 2023) (awarding fees to the defendant where the plaintiff's attorney refused to turn over billing records or even propose an award amount, obstructed the proceedings, "harass[ed]" the opposing counsel, and admitted to the judge that his behavior was "petty").

*Costs*

Plaintiff finally moves for $590 in costs, including the $405 initial filing fee, $85 for service of the complaint on Midland, and the $100 filing fee for Mr. Zelman's pro hac vice motion. Without disputing that Plaintiff is entitled to the service-of-process fee, Midland argues that it is only responsible for 25 percent of the initial filing and pro hac vice filing fees. Here, the Court agrees. The four remaining Defendants should each be responsible for 25 percent of the shared initial fees.

\* \* \*

The Court concludes that an award of $20,175 in attorneys' fees and $211.25 in costs is reasonable and, including the $7,500 agreed to in the offer of judgment, awards Plaintiff a total of $27,886.25.

## ORDER

For the reasons discussed above, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Attorneys' Fees and Costs [Dkt. 58] is **GRANTED in part**; and

2. Midland shall pay a total of $27,886.25, which includes the amount for the offer of judgment ($7,500.00), and reasonable attorneys' fees ($20,175.00) and costs ($211.25).

Date: December 9, 2025

*s/Katherine Menendez*
Katherine Menendez
United States District Judge